IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J. REUBEN RAINEY, #187-836,   *
      Plaintiff,
                                              *
     v.   CIVIL ACTION NO. AW-06-2378
                                              *
JOHN P. GALLEY, et al.,
      Defendants.   *

**MEMORANDUM**

On September 13, 2006, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. §1983, seeking compensatory and punitive damages. Counsel for Defendants has filed a dispositive motion (Paper No. 16), which shall be treated as a Motion for Summary Judgment. Plaintiff has filed a response. Paper No. 17. No hearing is needed to resolve the question as to whether Plaintiff is entitled to relief in this case. *See* Local Rule 105.6 (D. Md. 2004).

**1. Factual Background**

Plaintiff states in his unverified complaint that on September 15, 2005, he was charged with a rule infraction by Officer Moore for alleged possession, passing or receiving contraband. Plaintiff claims that the alleged controlled dangerous substance was not tested by Officer Moore but rather by Officer Clise, and that pursuant to Division of Corrections policy only Officer Moore could write the rule infraction. He states "that Office Clise C.O. II did not write an affirmed statement of act upon testing the alleged C.D.S but instead he wrote a matter of record on a continuation sheet of a notice of inmate rule violation." Paper No. 1. Plaintiff requested representation by Captain Northcraft,[1] the presence of Officer Baker as a witness, and introduction of a video at his rule infraction hearing.

---

[1] The Inmate Hearing Record of September 23, 2005, shows that Captain Northcraft declined to act as Plaintiff's representative and Plaintiff, who was present at that hearing, elected to represent himself. The hearing was continued. Paper No. 16, Ex. 2, p. 2.

Plaintiff states that upon being served with the infraction he was immediately placed on administrative segregation, where he was held from September 15, 2005 until October 6, 2005. Plaintiff contends that pursuant to Division of Correction ("DOC") regulations he was to be taken before a hearing officer withing seven days of the date of the infraction.

Plaintiff also states that on October 6, 2005, Officer Whitacre came to his cell to take him for his adjustment hearing.  When Whitacre ordered Plaintiff to submit to handcuffing, Plaintiff advised him that he could not be single handcuffed from the back because he suffered from cysts in both shoulders which caused sharp pain to shoot across his chest if his right arm was placed too far behind his back.  He suggested that Whitacre use a double set of handcuffs or use three piece restrains.  Whitacre refused and asked Plaintiff if he any medical papers supporting his claim. Plaintiff stated the papers had expired, and showed Whitacre the papers.  Whitacre advised Plaintiff that without updated medical papers he would need to be handcuffed from behind with one set of handcuffs and declined to use a pair of leg irons as an alternative to cuffs.  When Whitacre took Plaintiff's right hand to cuff Plaintiff, he experienced sharp pain across his chest, forcing him to fall to one knee and to cry out in pain.  Whitacre took the cuff off and left Plaintiff's cell, stating "you refuse."  Approximately fifteen minutes later Whitacre returned to the cell and slid in the decision of the hearing officer, who found Plaintiff guilty of the all charges.  Plaintiff received 300 days of disciplinary segregation and loss of one year of visitation.  Plaintiff states the decision was based on his failure to appear for the hearing.  *Id.*

Whitacre states that on October 6, 2005, he was assigned to escort Plaintiff to his adjustment hearing. Plaintiff refused to be handcuffed, stating that he needed two handcuffs per medical orders. Whitacre avers that he called the WCI Medical Department and was advised that there was nothing in Plaintiff's medical file which indicated special handcuffing procedures.   Whitacre returned to Plaintiff's cell and asked him to submit to handcuffing.  Plaintiff refused and presented Whitacre

2

a document from a different institution authorizing alternative handcuffing procedures. Officer Whitacre avers that the document appeared bo be modified. After Plaintiff again refused to be cuffed, Whitacre left the cell and advised the hearing officer that Plaintiff refused to exit his cell for the hearing. Paper No. 16, Ex. 1 and Ex. 2, p. 10 (Waiver of Rights and In Absentia Hearing).

The uncontroverted institutional records demonstrate that Plaintiff was served with notice of the rule violation on September 16, 2005. *Id.*, Ex. 2, p. 7. The record of the adjustment hearing demonstrates that the hearing officer found that Plaintiff "did possess and attempt with his foot to sweep a paper from the tier under a cell door then again when first missing same attempted a second time to kick same under the door. [The hearing officer further found] that the reporting officer then went to the area and did confiscate the paper with what was discovered to [contain] heroin." *Id.*, Ex. 2 p. 5.

The uncontroverted medical records reveal that on October 6, 2005, Plaintiff's medical file did not contain an order requiring that he be handcuffed in any special manner. *Id.*, Ex. 3. Plaintiff did file a sick call slip on October 7, 2005, complaining of the pain in his shoulders and raising the need to be double-cuffed. *Id.*, Ex. 3, p. 17. During the remainder of 2005, Plaintiff was seen by various medical personnel. *Id*. No orders were entered by the medical department from December 2004, through November 2005, requiring a special handcuffing procedure to be used on Plaintiff. *Id.*, p. 58-74.

Plaintiff has attached a copy of a medical order dated February 26, 2002, requiring that he be handcuffed in the front for six months. Paper No. 17, Ex. 1. He has also attached a copy of an order dated February 8, 2007, requiring that he be handcuffed in the front for six months. Paper No. 17, Ex. 2.

**2. Standard of review**

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor.  *See Halperin v. Abacus Tech. Corp.*,128 F.3d 191, 196 (4th Cir. 1997) (*citing Anderson,* 477 U.S. at 255).  The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991).  The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion.  *Anderson*, 477 U.S. at 252.

### 3. Analysis

**A. Violation of DOC policy**

Plaintiff's contention that Defendants violated the DOC's own procedural guidelines in the writing of his rule infraction and in failing to provide him a hearing within seven days of the date of the infraction thus depriving him of due process, does not state an independent federal claim. Under *Sandin v. Conner*, 515 U.S. 472, 478-87 (1995) a prison occurrence may amount to a deprivation of a liberty interest entitled to procedural protection under the Due Process Clause if (1) statutes or regulations narrowly restrict power of prison officials to impose the deprivation, and (2) the liberty interest in question is one of "real substance," provisions that merely provide procedural requirements, even if mandatory, cannot provide basis for constitutionally protected liberty interest.[2]

**B.  Disciplinary Hearing**

---

[2]*See also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461-62 (1989); *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) ("prisoners may no longer peruse statutes and prison regulations searching for the grail of limited discretion").

Plaintiff's claim that he was denied due process when the disciplinary hearing was held in absentia also fails.  In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain procedural due process protections including,  advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision.  *See Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974). Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).

Plaintiff did not suffer the loss of any good time credits.  Thus, he was not entitled to any of the protections articulated in *Wolff*.  The record demonstrates, however that Plaintiff was provided notice of the hearing and opportunity to be heard, and  received a written opinion based upon "some evidence." Paper No. 16, Ex. 2, p. 1-10.  That Plaintiff declined to avail himself of the opportunity to attend the hearing due to his alleged medical problem does not alter the fact that he received all the process that was due. Plaintiff did not have a current medical order authorizing him to be specially handcuffed at the time he was to be escorted to the hearing.  Accordingly, the Court finds no due process violation.

**C. Administrative Segregation**

To the extent Plaintiff claims that his being held on administrative segregation pending his adjustment hearing was improper and violated his due process rights, his claim fails. Segregation is not per se cruel and unusual punishment.  *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984) (segregated protective custody); *Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983) (administrative segregation).  The questions to be asked are whether a constitutionally protected liberty interest is at stake, and if so, what due process protections are required.  *See Wolff v. McDonnell*, 418 U.S. 539 (1974).

In *Sandin*, the Supreme Court focused on the nature of the deprivation alleged, stating that a liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Thus, *Sandin* requires the due process inquiry to focus on the nature of the deprivation alleged and not on the language of particular prison regulations. *Id.* No liberty interest is implicated in placement on administrative segregation. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996). It is not "atypical" for inmates to be placed on administrative segregation for any number of reasons. *Hewitt*, 459 U.S. 460, 468 (1983). Further, Plaintiff has not alleged that the conditions of segregation were significantly more onerous than those of general population. *See Beverati,* 120 F.3d at 504 (conditions of administrative segregation at Maryland Penitentiary); *Knox v. Lanham*, 895 F. Supp. 750, 758-59 (D. Md. 1995) (administrative segregation at Eastern Correctional Institution). Thus, plaintiff's placement and retention on administrative segregation pending his adjustment hearing do not amount to a violation of a constitutionally protected right.

### 4. Conclusion

Given the foregoing, Defendants' Motion to Dismiss or for Summary Judgment is granted. Plaintiff's Motion for Summary Judgment is denied. A separate Order shall be entered in accordance with this Memorandum.


  June 25, 2007                                                                /s/
Date                                                                Alexander Williams, Jr.
                                                                      United States District Judge